IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
|    MICHAEL ALLEN COLLINS, | § | Case No. 19-32745 |
| | § | |
|       Debtor | § | |
| | § | |
| | § | |
| CORINNA von SCHÖNAU-RIEDWEG and | § | |
| EBUR INVESTMENTS, LLC | § | |
| | § | |
|      Plaintiffs, | § | |
| | § | |
| vs. | § | Adversary No. _____ |
| | § | |
| MICHAEL ALLEN COLLINS, | § | |
| | § | |
|      Defendant. | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT FOR NON-DISCHARGE OF INDEBTEDNESS AND DENIAL OF DISCHARGE**

TO THE HONORABLE JEFFREY P. NORMAN, U.S. BANKRUPTCY JUDGE:

Corinna von Schönau-Riedweg and Ebur Investments, LLC (together, "Plaintiffs") file their *Original Complaint for Non-Discharge of Indebtedness and Denial of Discharge* (the "Complaint") and in support thereof would show the Court the following.

## I. JURISDICTION AND VENUE

1. The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334 and 157 and pursuant to 11 U.S.C. §§ 523 and 701, et seq.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and/or 1409.

## II. PARTIES

4.      Plaintiffs are creditors of Michael Allen Collins ("Collins" or the "Defendant"), the debtor in the underlying bankruptcy case (the "Bankruptcy Case").  The Plaintiffs may receive notice and be served with any papers by and through the undersigned counsel.

5.      Collins, the Defendant, may receive notice and may be served with any papers through his counsel of record in this case, Patrick D. Devine, 620 W. Main St., Suite C Townhall, TX 77375, and at his address, 63 Sky Terrace Place, The Woodlands, TX 77381.  Collins has agreed to waive formal service of this Complaint under Bankruptcy Rule 7004(d), and Plaintiffs will file the appropriate, returned form.

## III. FACTUAL BACKGROUND

6.      On May 14, 2019 (the "Petition Date"), Collins filed a voluntary Chapter 7 petition and commenced the Bankruptcy Case.

7.      As set more fully set forth in the pleadings of the Plaintiffs in the Massachusetts Case (defined, infra) (including the *Second Amended Petition* from the Massachusetts Case (the "Massachusetts Pleading"), a copy of which is attached hereto as **Exhibit A** and incorporated by reference herein) and, as discussed below, Plaintiffs have obtained a judgment against Collins for claims resulting from his fraud and misuse of Plaintiffs' investment funds.  Collins has continued to evade paying Plaintiffs or disclosing his assets.

8.      The damages suffered by Plaintiffs because of Collins' fraudulent, misleading actions exceed $7 million and continue to accrue interest.

9.      Plaintiff Ebur is a limited liability company organized pursuant to the laws of the State of Delaware, and is a creditor in the Bankruptcy Case.

**PLAINTIFFS' ORIGINAL COMPLAINT FOR NON-DISCHARGE OF INDEBTEDNESS AND DENIAL OF DISCHARGE - Page 2 of 21**

10.     Plaintiff von Schönau is a natural person and citizen of Switzerland and is a creditor in the Bankruptcy Case.

11.     Plaintiffs have fully and timely performed all relevant obligations and complied with all conditions precedent to recovery in the Massachusetts Case, and herein.

**A.     The Path to Collins' Fraud**

12.     In 2002, Plaintiff von Schönau inherited a large amount of shares in Novartis International AG ("Novartis"), a global pharmaceutical company.  These shares represented von Schönau's family legacy - resulting from her grandfather's efforts with Novartis' predecessor, the pharmaceutical company Ciba Geigy.

13.     Von Schönau was not an experienced investor, and was not aware of the extent of her inheritance until her parents passed away.  Von Schönau wanted to preserve her inheritance to pass it on to her children after she died, while at the same time generating a reasonable income.

14.     Von Schönau had known Baron Wilfrid von Plotho for many years as a family friend.  Prior to inheriting her Novartis shares, von Schönau never had any business dealings with von Plotho or his employer, Rothschild Bank AG ("Rothschild").[1]

15.     Von Plotho learned that von Schönau had been bequeathed the Novartis shares shortly after von Schönau came into her inheritance.  Von Plotho, leveraging his friendship, became von Schönau's financial advisor.

**B.     Formation and Involvement of Ebur**

16.     In 2006, Tripex Investments, Inc. ("Tripex") was formed to encompass all of von Schönau's private equity investments.  Tripex was ultimately reorganized into Ebur, and Tripex transferred all of its assets and liabilities to Ebur.

---

[1] Today, Rothschild & Co Bank AG.

**PLAINTIFFS' ORIGINAL COMPLAINT FOR NON-DISCHARGE OF INDEBTEDNESS AND DENIAL OF DISCHARGE - Page 3 of 21**

C.     **Texas Syngas**

17.     Texas Syngas, Inc. was formed in 2004 to exploit the technology portfolio of a defunct company called Molten Metal Technology, Inc. ("Molten Metal"), which had been founded and promoted by Mr. John Preston ("Preston").   In 1999, after Molten Metal went bankrupt, Quantum Catalytics, LLC. ("QCI"), another entity founded and controlled by Preston, purchased Molten Metal's technology portfolio.  In 2006, QCI licensed its technology to Texas Syngas in return for 10% of the available shares in Texas Syngas.

18.     In 2007, Collins – a principal of Texas Syngas – sought Plaintiffs' money, ostensibly for Texas Syngas' corporate plans.  Collins claimed Texas Syngas was attempting to convert waste materials into commercially feasible synthetic gas.  Collins misled Plaintiffs as to his expertise and education, including, but not limited to, the existence of university degrees. Following presentations, von Schönau invested in Texas Syngas.  Collins led von Schönau to believe that Texas Syngas converted scrap or waste materials into usable and commercially feasible synthetic gas.

19.     Von Schönau was introduced to Collins and believed that Collins was a true technical expert based on Collins' own representations.  In 2008, von Schönau was introduced to Mr. Michael Sydow, a former CEO of Texas Syngas.

20.      Collins represented that the value of the technology Texas Syngas possessed at the time exceeded USD $100 million.  These discussions with von Schönau and Collins and his associates caused von Schönau to believe that the technology was sound and proven, and that her money would be well-supervised.  Collins failed to disclose that this valuation was grossly overstated and was based on purely speculative prospects, not current value.

D.    **Fall River Facility in Fall River, Massachusetts**

21.    Based upon these representations von Schönau invested $5 million in Texas Syngas (the "Investment") with the understanding that the investment would be used for building a reactor (the "Fall City Facility") at a research and development center in Fall River, Massachusetts which could convert waste materials.  At the time, the Fall River Facility was owned by the Meissener Trust, another entity controlled by Preston.  Atomic Ordered Materials LLC ("AOM"), and its successor Continuum Energy Technologies, LLC ("CET") - companies founded by Preston - shared the Fall River Facility with Texas Syngas/NC 12, Inc. ("NC 12").  In April 2010, von Schönau and von Plotho traveled to Massachusetts to the Fall River Facility to look at what she was told was a reactor.

22.    In September 2008, Collins represented that Texas Syngas had purchased the Fall River Facility; however, the property was never actually transferred to Texas Syngas.  Instead, through a complex transaction, the Fall River Facility was transferred to Fall River Realty, Ltd. with that entity then leasing the Fall River Facility to Texas Syngas for USD $28,000 per month (the "Lease").  These dealings were never disclosed to the Plaintiffs.

E.    **Improper Use of Investment Monies at Texas Syngas**

23.    In 2009, Texas Syngas was having problems with its contractors, who Texas Syngas was not paying (also not disclosed to the Plaintiffs).  This was because Texas Syngas and Collins were diverting the money they raised, ostensibly for developing the aforementioned reactor or other facilities or processes which could have led to commercial feasibility at the Fall River Facility, to gratuitous expenses of travel, luxury offices, professional fees, outside consultants and lease payments for an unnecessary airplane.  Texas Syngas was also paying C Change Investments,

LLC ("CCI"), a company managed and owned by Texas Syngas insiders, $40,000 per month in consulting fees.

24.     Still, relying on the representations (and the omissions) of Collins, von Schönau made the Investment and purchased approximately USD $5 million worth of preferred shares in Texas Syngas.  Von Schönau also transferred USD $1 million worth of her Texas Syngas shares as von Plotho's purported finder's fee.

25.     Also unknown, because Collins did not disclose it, was the fact that Preston and Texas Syngas were being sued at this same time in Texas for securities fraud by former investors.

**F.     The Insolvency and Dissolution of Texas Syngas**

26.     Later in 2009, Texas Syngas transferred its assets and liabilities to NC 12 and dissolved.  At the end of 2010, all of the employees of NC 12 were terminated and all its business operations ceased.  The following year NC 12 filed bankruptcy.  The bankruptcy petition states that NC 12 had no assets.  Plaintiffs lost their entire Investment.

**G.     The Massachusetts Case and Judgment**

27.     On December 27, 2012, Plaintiffs filed a Massachusetts state court action against Collins and others asserting claims for intentional misrepresentation/deceit, violation of the Massachusetts Consumer Protection Act and violation of the Massachusetts Securities Act based upon, among other things, material misrepresentations Collins made in connection with the Investment (the "Massachusetts Case and the Massachusetts Claims").  Plaintiffs amended their complaint as discovery progressed, and filed their amended complaint on February 21, 2014, keeping the Massachusetts Claims intact.

28.     The Massachusetts Claims were all  based on the same nucleus of facts concerning Collins inducing Plaintiffs to make the Investment, with Collins having no plans to actually utilize

the Investment for its stated purpose.  For instance, the Massachusetts Pleading (again, fully incorporated herein) alleged:

> Based upon representations made by …  Collins, von Schönau invested in Texas Syngas with the understanding that the investment would be used for building a reactor at a research and development center in Fall River, Massachusetts which would convert waste materials into commercially feasible synthetic gas.  At the time they made this representation, the Fall River Facility was owned by [an insider controlled entity].  AOM/CET shared the Fall River Facility with Texas Syngas/NC 12.  Based on information and belief, Preston and Sydow falsely told von Schönau that the Fall River Facility had been purchased by Texas Syngas, when in fact it had only been leased.  Further, the facility was leased from an entity owned by Sydow and in which von Schönau had no ownership interests.  Instead of being used to build the aforementioned reactor at the Fall River Facility, von Schönau's money was spent on travel, luxury offices, professional fees, outside consultants, and lease payments for an airplane.[2]

29.     The elements of intentional misrepresentation/deceit under Massachusetts law are:

     a.   an intentional or reckless,

     b.   misstatement of an existing fact,

     c.   of a material nature,

     d.   causing intended reasonable reliance, and

     e.   financial harm to the plaintiff.[3]

30.     The elements of a violation of the Massachusetts Consumer Protection Act are:

     a.   unfair or deceptive act or practice,

     b.   of another person who engaged in trade or commerce,

     c.   which causes damages to a consumer[4]

---

[2] Massachusetts Pleading at para. 169.
[3] *Welch v. Barach*, 84 Mass. App. Ct. 113, 120, 993 N.E.2d 742, 748 (2013).
[4] *Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.,* 469 Mass. 813, 822, 17 N.E.3d 1066, 1076 (2014).

31.     The elements of a violation of the Massachusetts Securities Act are:

    a.  the defendant offers or sells a security,

    b.  in Massachusetts,

    c.  by making "any untrue statement of a material fact" or by omitting to state a material fact,

    d.  the plaintiff did not know of the untruth or omission, and

    e.  the defendant knew, or in the exercise of reasonable care would have known, of the untruth or omission.[5]

32.     So, all the Massachusetts Claims required fraud or intentionally misleading actions on Collins' behalf.

33.     Collins had actual notice of the Massachusetts Case throughout its pendency and communicated with Plaintiffs' agents.  Collins also filed papers in the Massachusetts Case.  However, Collins chose to not formally answer.

34.     On August 14, 2014, Plaintiffs moved for entry of default against Collins.  A Default Order entered against Collins on September 4, 2014.  Pursuant to Mass. R. Civ. P. 55(b), upon default, the factual allegations in the Complaint regarding the defendant are taken as true for the purposes of establishing liability.  *See Multi Technology, Inc. v. Mitchell Mgmt. Sys., Inc.*, 25 Mass. App. Ct. 333, 334-335 (1988) (citing *Productora e Importadora de Papel, S.A. de C.V. v. Fleming*, 376 Mass. 826, 833-835 (1978)).

35.     Plaintiffs filed a motion in the Massachusetts Court proving up their damages in the amount of a principal amount of $ 5 million, with interest accruing at 12% per annum, per

---

[5] *Marram v. Kobrick Offshore Fund, Ltd.*, 442 Mass. 43, 52, 809 N.E.2d 1017, 1026 (2004).

Massachusetts law,  Mass. Gen Laws ch. 231 § 6B, for a total amount of $5,999,999.94 as of August 26, 2011.

36.     The Massachusetts Court held a hearing on October 6, 2014 and, after reviewing Plaintiffs' arguments and evidence (and after subsequent notice to Collins), entered a judgment on December 2, 2014 against Collins in the amount requested by Plaintiffs - $5,999,999.94 (the "Massachusetts Judgment," attached as **Exhibit B**).  The Massachusetts Judgment continues to accrue interest.

**H.     Defendant's Repeated History of Non-Compliance with Court Orders**

37.     The Massachusetts Judgment remains wholly unsatisfied, in spite of years of pursuit of Collins to either (1) pay it or (2) provide proof that he cannot.

38.     On or about March 24, 2015, Plaintiffs submitted a Petition to Enforce Foreign Judgment with the District Court of Montgomery County, Texas (the "Texas Court"), in Case No. 15-02-01888 (the "Texas Case").

39.     On September 10, 2015, Plaintiffs served Collins with Plaintiffs' First Set of Interrogatories to Defendant Michael Collins and to produce documents responsive to Plaintiffs' First Request for Production to Defendant Michael Collins (collectively, the "Discovery Requests") in an effort to satisfy the Massachusetts Judgment.  Collins served his responses and objections to the Discovery Requests on October 9, 2015.  Collins answers were incomplete and evasive.

40.     After not being able to get responsive and complete answers from Collins, Plaintiffs moved to compel Collins to respond to their discovery requests (the "First Motion to Compel"). On February 16, 2016, the Texas Court granted the First Motion to Compel, and ordered Collins to provide Plaintiffs with complete responses to the Discovery Requests by March 3, 2016.

41.     After Collins purposefully evaded service of process, Plaintiffs finally served him and obtained a June 23, 2016 hearing concerning Collins' refusal to comply with the Court's Order compelling Defendant to respond to the Discovery Requests by March 3, 2016, Collins stated in open court, among other things, that he would provide Plaintiffs with (1) a completed and signed IRS Form 4506 Request for Copy of Tax Return by July 11, 2016, and (2) complete and accurate responses to the Discovery Request.  This agreement was memorialized in the Court's Order, dated June 30, 2016.  **Exhibit C**.  Plaintiffs e-mailed and mailed copies of this Order to Defendant.

42.     Plaintiffs have asked Defendant multiple times for this information, but Collins ignored Plaintiffs.

- On July 7, 2016, Plaintiffs' counsel sent a follow-up e-mail to Defendant reminding him that Plaintiffs were expecting to receive the completed and signed IRS Form 4506 by July 11, 2016, as per the Texas Court's Order.  Collins ignored Plaintiffs and never responded to this e-mail.

- On July 11, 2016, Plaintiffs tried multiple times to reach Defendant on the telephone number that Collins provided to Plaintiffs in his incomplete discovery responses.  Every time Plaintiffs attempted to call this number, Plaintiffs received a message that the number had been disconnected.

- That same day, Plaintiffs sent Collins a follow-up e-mail reminding him that the IRS Form 4506 was due that day.  Prior counsel for Collins responded to this e-mail and told Plaintiffs' counsel that Collins was out of town, but that Collins would

be back in town by July 15, 2016, and that he would get Plaintiffs the signed Form 4506 by then.  However, he did not.[6]

## I.     <u>Defendant Tries to Thwart Plaintiffs' Efforts with false statement of Bankruptcy</u>

43.     Collins did contact Plaintiffs to try to delay collection through an unsubstantiated claim that he was filing for a bankruptcy in 2016.  On July 18, 2016, Collins called Plaintiffs' counsel to tell them that he was filing for bankruptcy.

44.     In an effort to verify with Collins whether he actually filed a bankruptcy petition at this time, Plaintiffs sent Defendant an e-mail on July 21, 2016, asking to provide the cause number or case number of Collins' bankruptcy petition or, alternatively, provide Plaintiffs with a copy of Defendant's bankruptcy filing.  Collins ignored Plaintiffs' request and never responded to this e-mail.  He did not file bankruptcy at that time.

45.     On July 29, 2016, Plaintiffs sent Collins another e-mail asking him to provide the cause number or case number of his bankruptcy petition or a copy of that bankruptcy filing. Plaintiffs also informed Collins that, since they had neither received any confirmation that Collins filed a bankruptcy petition nor been able to locate his bankruptcy filing on the Bankruptcy Court's website, Plaintiffs were still expecting to receive a completed and signed IRS Form 4506 and complete responses to Plaintiffs' Discovery Requests, per the Court's Order.  Again, Collins ignored Plaintiffs' e-mail and refused to provide Plaintiffs with a completed and signed IRS Form 4506 and complete responses to the Discovery Requests.

---

[6] Collins' bankruptcy counsel ultimately provided documents alleged to be his tax returns from 2013-2018 by email on August 15, 2019.

**J.      Collins Continues to Refuse to Comply with the Court's Orders, and is Admonished by the Texas Court**

46.      On September 5, 2018, Plaintiffs served Collins with a Notice of Deposition (the "Notice").  That Notice included a request for the production of documents attached to the Notice as Exhibit "A."  On October 11, 2018, Plaintiffs filed their Motion to Compel Michael Collins and Ellen Collins to Give Deposition in Aid of Judgment in the Texas Cases (the "Second Motion to Compel").

47.      On November 7, 2018, the Texas Court heard oral argument on the Second Motion to Compel.  The Texas Court then granted the Second Motion to Compel.  The Order required Collins to bring documents that were responsive to the requests for production of documents attached to the Notice.

48.      On December 7, 2018, Plaintiffs deposed Collins and his wife, Ellen, at the offices of Drucker Hopkins, LLP, located at 2700 Research Forest Drive, Suite 124, The Woodlands, TX 77381.  Collins was present for the deposition, but did not bring any of the Documents, greatly hampering examination of him at the deposition.  Collins claimed he had not filed tax returns for the previous six years.  This was proven to be a lie when his bankruptcy attorney produced tax returns the week before the filing of this Complaint.  At his deposition, Collins claimed he had zero documents to demonstrate net worth.  Collins repeatedly was evasive about answers, including how much rent he paid.

49.      Collins was asked about a house in Montgomery County, Texas at 30 Wishbonebush Drive, but claimed he did not know the address.  This was a lie.  Surveillance had demonstrated that Collins had been staying at that house.  Ellen Collins confirmed it was where their son had been living for the past four years.

**PLAINTIFFS' ORIGINAL COMPLAINT FOR NON-DISCHARGE OF INDEBTEDNESS AND DENIAL OF DISCHARGE - Page 12 of 21**

50.     Collins testified he owed Mr. Johann von der Goltz somewhere between $300,000 and $400,000 from amounts borrowed from 2011 to 2017 under a promissory note that states that Mr. Collins is to pay Mr. von der Goltz three times the amount borrowed when he can.  Mr. von der Goltz was recently arrested in London in connection with the Panama Papers scandal and evading       taxes       (https://www.internationalinvestment.net/news/4000120/us-brings-charges-mossack-fonseca-panama-papers-case).

51.     On December 13, 2018, Collins called Plaintiffs and agreed to produce some of the Documents by December 17, 2018.  Specifically, Collins agreed to produce bank account records and to sign and return a IRS Form 4506 (Request for Copy of Tax Return).  The following day, Plaintiffs sent Collins an email with a completed IRS Form 4506 attached.

52.     On February 5, 2019, one of Collins' banks, BBVA Compass, produced bank records of Collins which showed the yearend totals for the account, and:

- A balance of $150,465.80 in December, 2011.

- A balance of $119,625.06 in December, 2012.

- **A balance of $27,504.76 in December, 2013, with only records from November and December of 2013 to account for the ~$100,000 depletion in assets in this account after the Massachusetts Case was filed (the "Depletion").**

- Regular payments on an American Express Card since 2011 from Collins which were not itemized.

- A $7,000 wire from Ahmed Alexander to Collins on December 8, 2016.

- Numerous "Check Cleared" entries without images or information for the checks.

53.     On February 27, 2019, the Texas Court entered an order finding that it had repeatedly ordered the production of financial documents and information, including property he

had an interest in and transfers (the "Information"), and that Collins had repeatedly refused to comply with those orders - holding: "***Michael Collins disobeyed and failed to comply with said Orders***," and ordered that he appear on March 28, 2019 to show cause why he should not be held in contempt. **Exhibit D.** Michael Collins purposely avoided service of the Order to Show Cause. His wife, Ellen Collins, however, was Ordered to appear, and was found in contempt of Court on March 28, but enforcement of the contempt order was delayed by agreement until April 24 so that Ellen Collins could have additional time to comply.

54.    On April 12, 2019, Ellen Collins, facing punishment for contempt, produced some financial records which had multiple four-figure cash infusions whose sources were unaccounted for, with a bank account balance rising from ~$1,000 to $13,000 rather suddenly without explanation. (Mr. Collins claims his wife is paid, before taxes ~$25,000/year.)

55.    Because Ellen Collins failed to comply, the parties were prepared to move forward with her contempt hearing unless Michael Collins came to accept service for his show cause hearing, which he had been avoiding for months. Finally, on April 24, 2019, the Texas Court entered another order finding that Collins had not produced the information and found, again, that: "***Michael Collins disobeyed and failed to comply with said Orders***," and ordered that he appear on June 13, 2019 to show cause why he should not be held in contempt. **Exhibit E.**

56.    Throughout the Texas Case, Collins and his family purposefully evaded service of process.

**K.    Collins Refuses to Produce Documents in his Bankruptcy Case**

57.    Collins' Schedules and SOFAs in the Bankruptcy Case and Abuse of the Bankruptcy Process show that (or his wife, under the community property laws) claim to

- Have no legal or equitable interest in any electronics.

- Have no legal or equitable interest in any sports equipment or materials for hobbies.

- Have no legal or equitable interest in any jewelry.

- Have no cash in his wallet, house, pocket or otherwise.

- Have no interest in any business.

- Have no interest in any general intangible except for a patent and a lawsuit.

- Have no unpaid loan receivables.

58.    On August 7, 2019, counsel for Plaintiffs requested that Collins produce the Information through the conferral process of the LBR for Rule 2004 requests.

59.    On August 12, 2019, Collins' counsel responded and promised to produce tax returns and stated that otherwise it was

> [too] difficult to respond to the request for documents contained in the Show Cause Order as I understand that many of them have either already been produced either by my client or by other parties, such as the bank for his account records prior to closing. Therefore, I really have no current understanding of which of the requested items are still considered outstanding.

60.    So, essentially, Collins argued that he did not know what he had produced and what he had not - in spite of the two orders from the Texas Court threatening him with contempt orders entered because he had produced nothing of substance.

61.    Collins' counsel also stated that

> My client does not believe there could be any misunderstanding regarding his distressed financial condition, nor that it would be a basis for your client to make its decision on filing an objection to dischargeability.

62.    Collins eventually produced documents purporting to be his tax returns on August 15, 2019, but no other documents in spite of Plaintiffs' demand.

**PLAINTIFFS' ORIGINAL COMPLAINT FOR NON-DISCHARGE OF INDEBTEDNESS AND DENIAL OF DISCHARGE - Page 15 of 21**

63.     In summary: "Just trust me" - in spite of years of evading court orders. Understandably, Plaintiffs are not satisfied, and object to Collins' discharge, and reserve the right to seek further relief, including under Bankruptcy Rules 2004 and 9037.

## IV. CAUSES OF ACTION

**1.       COUNT 1 — Non-discharge of indebtedness pursuant to 11 U.S.C. 523(a)(2).**

64.     Plaintiffs incorporate all of the foregoing paragraphs of the Complaint into this count as if fully set forth herein.

65.     The conduct of Collins as described above constituted false pretenses, false representation, and/or actual fraud.

66.     Pursuant to 11 U.S.C. § 523(a)(2), Plaintiffs respectfully request that the Court deny Collins a discharge with respect to the damages suffered by Plaintiffs as a result of the false pretenses, false representations, and/or actual fraud committed by Collins.

**a.       Fraud, § 523(a)(2)(A).**

67.     Collins represented to Plaintiffs that he would use the Investment for the Fall River Facility, but he used much of it, if not all of it, for personal gain and did not disclose material facts as described above.

68.     These representations (i) were knowingly false or made with reckless disregard as to whether such representations were true, and (ii) made with the intent to deceive Plaintiffs.

69.     Plaintiffs actually and justifiably relied on Collins' representations described above.

70.     Plaintiffs have sustained damages of at least $7 million as a proximate result of their reliance.

b.    **False pretenses and/or false representations, § 523(a)(2)(A).**

71.    Collins represented to Plaintiffs that he would use the Investment for the Fall River Facility, but he used much of it, if not all of it, for personal gain, and did not disclose material facts as described above.

72.    These representations described past and/or current facts at the time of the representations regarding the abilities, competencies, and/or intentions of Collins.

73.    These representations were false, and Collins knew that the representations were false at the time the representations were made.

74.    Plaintiffs have sustained damages of at least $7 million as a proximate result of the false pretenses and/or false representations of Collins.

c.    **False statements of financial condition, § 523(a)(2)(B).**

75.    Collins induced Plaintiffs to make the Investment by providing Plaintiffs with information and material concerning the solvency, reputation and financial condition of Collins and his company Texas Syngas.

76.    Such information was false and failed to advise of the serious financial problems that were facing Collins and Texas Syngas.

77.    Collins made or published these statements with the intent to deceive Plaintiffs.

78.    Plaintiffs relied upon such statements.

79.    Plaintiffs have sustained damages of at least $7 million as a proximate result of the false statements created and/or provided by Collins.

2.    **COUNT 2 — Non-discharge of indebtedness pursuant to 11 U.S.C. 523(a)(4).**

80.    Plaintiffs incorporate all of the foregoing paragraphs of the Complaint and Second Amended Complaint into this count as if fully set forth herein.

81.     The conduct of Collins, as described above, constituted defalcation of duty and larceny and/or embezzlement of the property (the Investment) of Plaintiffs.

82.     Pursuant to 11 U.S.C. § 523(a)(4), Plaintiffs respectfully request that the Court deny Collins' discharge with respect to the damages suffered by Plaintiffs as a result of the above described conduct.

### a.     Defalcation / breach of fiduciary duty.

83.     Collins owed a duty to Plaintiffs to use the Investment for the stated purpose, including building and maintaining a reactor at the Fall River Facility.

84.     Collins failed in this regard, thus breaching his duty.

85.     Plaintiffs suffered damages directly and as a result of such breaches in at least the amount of $7 million.

### b.     Embezzlement.

86.     Collins misappropriated the Investment.

87.     The Investment provided by Plaintiffs and placed into the care of Collins should have been used to complete the reactor at the Fall River Facility and for other legitimate business purposes.

88.     Collins obtained the Investment with fraudulent intent by the representations and other conduct described herein.

89.     Collins used a substantial portion of the Investment for his own benefit.

90.     Plaintiff sustained damages as a result of the embezzlement committed by Collins.

### c.     Larceny.

91.     Collins misappropriated the Investment and intended such misappropriation from the outset.

**PLAINTIFFS' ORIGINAL COMPLAINT FOR NON-DISCHARGE OF INDEBTEDNESS AND DENIAL OF DISCHARGE - Page 18 of 21**

92.     Collins fraudulently and wrongfully took the Investment with the intent to convert the funds to, or for the use and benefit of himself in ways unrelated to their proper use, and with the intent to permanently deprive Plaintiffs of the use and benefit of the funds that Plaintiffs provided.

93.     The funds provided by Plaintiffs and placed into the care of Collins should have been used to complete the reactor at the Fall River Facility and for other legitimate business purposes.

94.     Collins obtained the funds with fraudulent intent by the representations and other conduct described herein.

95.     Collins used the funds for his own benefit.

96.     Plaintiffs sustained damages as a result of this larceny.

**3.     COUNT 3 — Non-discharge of indebtedness pursuant to 11 U.S.C. 523(a)(6).**

97.     Plaintiffs incorporate all of the foregoing paragraphs of the Complaint (and Second Amended Complaint) into this count as if fully set forth herein.

98.     Collins by his conduct willfully (or with gross negligence) maliciously injured Plaintiffs.

99.     Plaintiffs suffered injury and damages as a result of this conduct.

100.    Collins intended both his conduct and that Plaintiffs would suffer such injuries.

101.    Pursuant to 11 U.S.C. § 523(a)(6), Plaintiffs respectfully request that the Court deny the discharge of the damages suffered by Plaintiffs, as a result of the willful and malicious conduct perpetrated by Collins.

4.     **COUNT 4 — Recovery of attorneys' fees and expenses.**

102.     Plaintiffs incorporate all of the foregoing paragraphs of the Complaint (and Second Amended Complaint) into this count as if fully set forth herein.

103.     Plaintiffs request that the Court award them attorneys' fees and expenses to the extent permitted by applicable law for the prosecution of this action, including, but not limited to, under the Texas Turnover Statute.

5.     **COUNT 5 — Denial of discharge under 11 U.S.C. § 727.**

104.     Plaintiffs incorporates all of the foregoing paragraphs of the Complaint (and the Massachusetts Pleading) into this count as if fully set forth herein.

105.     Collins - notably by refusing to timely produce his records in the Texas Case - has demonstrated a history of evasion and concealment of his records, including books, documents, records and papers from which his financial condition or business transactions might be fairly ascertained, including, but not limited to, the unaccounted for Depletion and unproduced Information.

106.     Further, in his Schedules and SOAs, Collins made suspect disclosures as referenced above.  Plaintiffs seek a Rule 2004 Examination, and reserve the right to amend this Count (and all others) based on the result of the same.

107.     The discharge should be denied pursuant to 11 U.S.C. §§ 727(a)(2), (3), (4), and/or (5).

6.     **COUNT 6 — Collateral Estoppel**

108.     The Massachusetts Judgment was litigated in Massachusetts, was determined by a valid and binding judgment, and the issues of fraud, deception and misuse of the Investment were essential to its rendering.  The Massachusetts Judgment acts as collateral estoppel on the issues of

fraud, deceit, misuse of Funds, and misrepresentations as to Collins' bad-faith, Collins' liability, the amount sought by Plaintiffs, and other issues herein.

## V. <u>CONCLUSION AND PRAYER</u>

WHEREFORE, Plaintiffs request that the Court issue a summons, and, upon a final adjudication of this action, deny the discharge of the Plaintiffs' claims against Collins as set forth above, deny Collins' discharge as set forth above, and award to Plaintiffs the costs of court and attorneys' fees and expenses to the extent permitted by applicable law.  Plaintiffs respectfully request all such other and further relief to which they are entitled at law or in equity.

Dated: August 19, 2019                  Respectfully submitted,

*/s/ Casey Doherty*
Casey Doherty
State Bar No. 24078431
Mukul Kelkar
State Bar No. 24063682
DENTONS US LLP
1221 McKinney Avenue, Suite 1900
Houston, Texas 77010
713-658-4600 Office
713-739-0834 Facsimile
**ATTORNEYS FOR PLAINTIFFS**